UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUIS J. HICKS,<br><br>          Petitioner,<br><br>vs.<br><br>DARWIN LeCLAIR, Superintendent,<br><br>          Respondent. | Case No. 9:07-CV-0613 (JKS) |

APPEARANCES:                                                              OF COUNSEL:

LOUIS J. HICKS
97-A-0646

Attica Correctional Facility
Exchange St.
Attica, New York 14011
Peititioner, pro se

ANDREW M. CUOMO                                              Thomas B. Litsky, Esq.
Attorney General of the State of New York        Assistant Attorney General
120 Broadway
New York, New York 10271

JAMES K. SINGLETON, JR.
Senior United States District Judge

## MEMORANDUM-DECISION AND ORDER

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 1997 judgment of conviction entered in the County Court of Schenectady County on one count of murder in the second degree, one count of assault in the first degree, criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. He seeks relief on the grounds that: (I) there was insufficient evidence to support the jury's verdict on the murder charge; (II) there was insufficient evidence to support the jury's verdict on the controlled substance offenses; (III) the causation jury instruction was erroneous; (IV) the trial court erred by not instructing the jury that assault was a lesser included crime; and (V) the trial court erred by admitting the autopsy and "before" photographs of the decedent. Docket No. 1. The Government has filed a Response disputing all of

1

Petitioner's grounds for relief.  Docket Nos. 7 (Response); 8 (Mem.).  As Petitioner's application is untimely it shall be dismissed.

## BACKGROUND

The Appellate Division, on direct review, succinctly summarized this case and denied on the merits most of the claims raised in the instant petition:

> Defendant's convictions result from his having sold $ 10 worth of crack cocaine, on credit, to the victim.  When defendant confronted the victim for payment, an argument ensued and defendant, using a sawed-off shotgun, at point-blank range, shot the victim in the face.  At the hospital, the victim's family asked for a "Do Not Resuscitate" order and elected to forego the use of antibiotics.  The victim died 13 days later from bronchopneumonia.  At trial, the medical examiner testified for the prosecution that the victim's wounds were so extensive that they never could have been closed, infection was inevitable and, therefore, the shotgun blast to her face caused her death.  Defendant's expert pathologist testified that, had the victim received proper antibiotic therapy, she "well might be alive today," although she would be scarred and disfigured.  His expressed opinion was that the action of the victim's family was a supervening cause which broke the chain of causation between the shotgun blast and the victim's death.  Defendant, after guilty verdicts were returned, was sentenced to 25 years to life for the intentional murder conviction, 7 1/2 to 15 years for the assault conviction, to run concurrently with the murder sentence, and 12 1/2 to 25 years for each of the drug convictions, as a second felony offender.  County Court directed that each drug sentence run consecutive to the murder and assault sentences.
>
> On appeal, defendant makes three related arguments addressed to the cause of death issue.  He asserts that the murder verdict is not supported by legally sufficient evidence, that it is against the weight of the evidence and that County Court's charge on this issue was erroneous.
>
> To prove defendant guilty of murder in the second degree, the People must establish beyond a reasonable doubt that defendant's conduct caused the death of the victim (see Penal Law § 125.00; People v Stewart, 40 NY2d 692, 697 [1976]).  A person causes the death of another when his or her conduct forges a link in a chain of events which brings about the death of another person.  The intervention of a secondary agency constitutes a defense to the charge only if the death is solely attributable to the secondary agency (see People v Stewart, supra at 697).  In other words, to break the chain of events sufficiently to preclude the requisite causation for murder, the evidence must conclusively establish that the death was in no way attributable to defendant's conduct (see People v Kane, 213 NY 260 [1915]).
>
> On this record, we cannot conclude that death was solely attributable to the victim's decision to forego medical treatment for infection (see People v Griffin, 80 NY2d 723, 727 [1993]), or that it was in no way attributable to defendant's conduct.  We thus conclude that the jury's determination is supported by legally sufficient evidence and is not against the weight of the evidence (see People v Bleakley, 69 NY2d 490, 495 [1987]; People v Jefferson, 248 AD2d 815, 817 [1998], lv denied 92 NY2d 926 [1998]).  Moreover, County Court's jury charge tracked, nearly word for word, relevant case law and we find it to be entirely proper.

> Next, defendant asserts that admission of autopsy photographs and one photograph depicting the victim's appearance before being shot was so prejudicial as to deprive him of a fair trial. However, the most significant issue during trial was the cause of death and the photographs are relevant and probative on that issue (see People v Stevens, 76 NY2d 833, 835 [1990]). As a result, we discern no abuse of County Court's discretion in admitting such photographic evidence (see People v Mastropietro, 232 AD2d 725, 726 [1996], lv denied 89 NY2d 1038 [1997]).
>
> We also conclude that legally sufficient evidence supports the jury's determination that defendant did indeed possess and sell a controlled substance. Although the testimony regarding the actual drug transaction comes from defendant's accomplice, other evidence presented by the People sufficiently corroborates the testimony of the accomplice to support the conviction (see CPL 60.22 [1]; People v Lawrence, 1 AD3d 625, 626-627 [2003], lv denied 1 NY3d 630 [2004]). Defendant's former girlfriend testified that she was present when defendant, the victim and the accomplice conversed concerning the drug transaction. Although not actually proving guilt (see People v Hudson, 51 NY2d 233, 238 [1980]), her testimony sufficiently links defendant to the commission of the crimes charged and is adequate corroboration of the accomplice testimony (see People v Breland, 83 NY2d 286, 294 [1994]).

*People v. Hicks*, 20 A.D.3d 695, 695-97 (N.Y. App. Div. 3d Dep't 2005). The court modified Petitioner's sentence for the controlled substance offenses for reasons unrelated to this petition and affirmed. *Id*. at 697. Petitioner was denied leave to appeal to the New York Court of Appeals on September 13, 2005. *See* Docket No. 9, Attach. 11.

Petitioner next filed a motion for a writ of error coram nobis dated December 7, 2006, in the Appellate Division. Docket No. 9, Attach. 12. Petitioner alleged that his appellate counsel was ineffective because he failed to argue that: (1) the trial court erred when it did not charge the jury with first-degree assault as an alternative to the second-degree murder); and (2) trial counsel was ineffective because trial counsel consented to the submission of the first-degree assault charge but not as an alternative or lesser included offense of second-degree murder. *Id*. The Appellate Division denied the motion without comment on February 7, 2007. *Id.*, Attach. 15. The Court of Appeals denied Petitioner leave to appeal on May 11, 2007. *Id.*, Attach. 18.

Petitioner's instant federal petition, filed June 11, 2007, was dated May 30, 2007. Docket No. 1. Respondent filed a response, arguing that the petition is untimely, three of the claims are unexhausted and procedurally barred, and that all the claims are without merit. Docket No. 8.

## LEGAL STANDARD

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") limits prisoners in custody pursuant to a state court judgment to one year for filing a federal petition for habeas corpus. 28 U.S.C. § 2244(d)(1). AEDPA's one-year statute of limitations applies to all federal habeas corpus petitions filed after the statute was enacted and therefore applies to the pending petition. *See Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). A state petitioner seeking a writ of habeas corpus must apply within one year of: "(A) the date on which the judgment became final . . ; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws the United States is removed . . ; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court . . ; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1). However, the limitation period is tolled while a state prisoner seeks post conviction relief in state court. 28 U.S.C. § 2244(d)(2). Tolling applies from the time a petitioner properly files his application for post conviction relief until it has achieved final resolution through the state's procedures. *See Carey v. Saffold*, 536 U.S. 214, 221 (2002); *Hizbullahankhamon v. Walker*, 255 F.3d 65, 70 (2d Cir. 2001).

## DISCUSSION

In this case, Petitioner was denied leave to appeal his conviction to the New York State Court of Appeals on September 13, 2005. Docket No. 9, Attach. 11. The judgment became final 90 days later on December 12, 2005. *See Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001). By the time Petitioner filed his motion for a writ of error coram nobis on December 7, 2006, 359 days of the period of limitations had elapsed. The limitation period was tolled by Petitioner's motion until May 11, 2007, the date the Court of Appeals denied him leave to appeal. *See* Docket No. 9, Attach. 18. As only six days remained in the limitation period, Petitioner was required to file his federal

application no later than May 17, 2007.  Petitioner's application, dated May 30, 2007, is clearly untimely.[1]

Petitioner presumes that his motion for a writ of error coram nobis tolled the period of limitations until May 25, 2007, the date he alleges he received the denial of leave to appeal from the Court of Appeals.  *See* Docket No. 1 at 13.  Petitioner's presumption is incorrect, "[t]he relevant date of final disposition is the date of issuance of a court order, not the date upon which such order is received by petitioner."  *Evans v. Senkowski*, 228 F.Supp 2d 254, 259 (E.D.N.Y. 2002); *Geraci v. Senkowski*, 211 F.3d 6, 9 (2d Cir. 2000).

Petitioner has not raised equitable tolling, nor is this a case where the Court would find it warranted.  "To be entitled to equitable tolling, [Petitioner] must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Lawrence v. Florida*, 459 U.S. 327, 127 S. Ct. 1079, 1085 (2007) (internal quotation marks omitted).  The Second Circuit has equitably tolled the period between the issuance of the order and its receipt in cases where the state court failed to send prompt notice and the petitioner made a reasonably prompt inquiry.  *Diaz v. Kelly*, 515 F.3d 149, 155 (2d Cir. 2008) (six months elapsed before court sent notice of the order).  Unlike *Diaz*, Petitioner in this case missed the deadline because of his own lack of diligence.

In *Diaz*, the petitioner had roughly three months remaining in the period of limitations when he initiated his motion for post conviction relief in state court.  *Id*. at 152.  Three months left ample time for the petitioner to receive prompt notice from the court of the denial of his motion and to prepare and file a federal application for habeas relief.  The petitioner's untimeliness in that case was thus entirely attributable to the state court's six-month delay in sending notice of its decision.  In this case, Petitioner waited 359 days before filing his motion for a writ of error coram nobis, leaving only six days for the denial notice to transit the mail and prison systems and for him to turn

---

[1]Under the "mailbox rule," a petitioner's application is deemed filed on the date he delivers the application to the prison authorities for mailing.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988); *Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001).  Petitioner signed the application on May 30, 2007, and alleged that he delivered it to prison authorities on that same date.  Docket No. 1 at 13-14.

5

around and file his federal habeas application.  It was not the state court's responsibility to send immediate notice to ameliorate the pickle in which Petitioner had placed himself through his own lack of diligence.  It needed only send reasonably prompt notice.  *See id.* at 154-55.  Thus, it was not the state court's tardiness that cost Petitioner in this case, but his own failure to diligently pursue his rights for nearly a year before finally filing an application for state post conviction relief.  As reasonable jurists could not disagree that the petition in this case was untimely, the Court declines to issue a Certificate of Appealability.[2]

    Accordingly, **IT IS HEREBY ORDERED** that:

1. Petitioner's application for writ of habeas corpus is DISMISSED;
2. The Court declines to issue a Certificate of Appealability; and
3. The Clerk shall enter judgment accordingly.

Dated this the 29th day of December 2008.

                                                /s/ James K. Singleton, Jr.
                                                **JAMES K. SINGLETON, JR.**
                                                      United States District Judge

---

[2] When a petition has been denied "on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).